IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SONYA HOFFMANN,<br>                                      Plaintiff,<br>v.<br><br>WELLS FARGO BANK, N.A.,<br>d/b/a Wells Fargo Home Mortgage,<br>and<br>PHELAN HALLINAN DIAMOND &<br>JONES, LLP,<br>f/k/a Phelan Hallinan & Schmieg, LLP,<br>and<br>FLASTER/GREENBERG, PC,<br>and<br>KENNETH S. GOODKIND, ESQUIRE,<br>                                      Defendants. | Civil Action No.: 16-4230 |

**PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO FLASTER/GREENBERG, PC, AND KENNETH S. GOODKIND,
ESQUIRE'S RENEWED MOTION FOR SUMMARY JUDGMENT**

Plaintiff, by and through undersigned counsel, submits this memorandum of law in opposition to the renewed motion for summary judgment filed by Defendants Flaster/Greenberg, PC, and Kenneth S. Goodkind, Esquire ("Goodkind") (Doc. 71).

**I.    PRELIMINARY STATEMENT**

As shown below, Flaster/Greenberg and Goodkind are not entitled to judgment as a matter of law, because, at minimum, there is a genuine dispute as to material fact, pursuant to Rule 56(a), as to their violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692g(a) (FDCPA).  Plaintiff herein incorporates her response in opposition to Flaster/Greenberg and Goodkind's first motion for summary judgment (Doc. 56) and surreply (Doc. 59) and letter to the Court dated October 19, 2017 (Doc. 65), each with attachments.

1

## II.     STATEMENT OF FACTS

Flaster/Greenberg and Goodkind's "Undisputed Material Facts" (Mem. Supp. Renewed Mot. Summ. J. at 2-4) are not undisputed.

On June 27, 2018, Plaintiff did depose Flaster/Greenberg's designated representative, Mitchell H. Kizner, Esquire ("Kizner"), pursuant to this Court's September 6, 2017 order. (Pearson Decl. ¶ 2 (citing Kizner Tr.); see Mem. Supp. Renewed Mot. Summ. J. at 2 (¶ 3) (citing Gersh Decl. ¶ 3).)  Kizner testified that, in response to this action, Goodkind exchanged e-mails with selected Flaster/Greenberg attorneys about their consumer-debt collection activity, and that these e-mails still existed and were available.  (Id. ¶ 3 (citing Kizner Tr. at 13:1 - 16:18 (citing Ex. Flaster Greenberg-4 at 2-3 (¶¶ 7, 9)) ("I think they are available.  I did look at them this morning, so I'm pretty certain they are."), 34:23 - 35:6, 40:4-21 (citing Ex. Flaster Greenberg-6 at 3 (¶ 9)), 41:12:17, 44:11-14 ("Q. But you believe there are e-mail responses existing? A. There is one or two that I've seen, maybe a third.  I don't know.")).)  Counsel for Flaster/Greenberg conceded that more attorneys may have been involved (id. ¶ 4 (citing Kizner Tr. at 43:11-14 ("Those are the two or three attorneys he can recall, but that doesn't mean it was only sent to two or three attorneys."))), and Kizner agreed (id. (citing Kizner Tr. at 43:18-20 ("[T]here may be more than that, but I'm just aware of seeing responses from two or three of them."))).  Kizner even promised to make those e-mail surveys available to Plaintiff.  (Id. ¶ 5 (citing Kizner Tr. at 27:15-17 ("As we sit here, I don't remember what his e-mail said, but you'll get the e-mail.  I don't remember what he said.")).)

Although, because he was not in the Bankruptcy Department (id. ¶ 6 (citing Kizner Tr. at 13:19 - 14:9 (citing Ex. Flaster Greenberg-4 at 2 (¶ 7)) ("Q. All right. Paragraph 7 goes on to say: While I know this to be the case from my practicing at Flaster for over 18 years, I also recently

confirmed this through e-mails to and from other Flaster attorneys.  Do you know who these other Flaster attorneys are that the paragraph refers to?  A. Yes.  You're speaking about Mr. Goodkind's efforts to determine this?  Is that what you're saying?  Q. Yes.  Who it is Mr. Goodkind means by the other Flaster attorneys.  A. Yeah.  He spoke mainly to attorneys in what is loosely called in our firm the Bankruptcy Department, but it actually has a more complex name."), 40:12-17, 43:15-20)) and, thus, not one of the attorneys surveyed, Kizner volunteered information about his own debt collection activity and admitted that he had records of such (id. (citing Kizner Tr. at 33:4-8 ("Q. Okay.  Do you have any records that would refresh your memory as to when you spoke to Mr. Goodkind about the apartment building activity?  A. There is a way that I could—that I could find out, yes."), 35:6-8 ("And I know I have maybe one or two letters where I pursued—sent a letter to a consumer."))).

    Kizner testified that Flaster/Greenberg centrally saves letters that it sends to consumers and other such records.  (Id. ¶ 7 (citing Kizner Tr. at 35:9-15 ("Q. Okay.  Does the firm keep records of such things, or is it up to each individual attorney to save the letters or something of that nature?  A. Well, the firm has a system called FileSite where attorneys are expected to put letters that they send out and even some that they receive on FileSite.")).)  Kizner testified that all new matters coming into Flaster/Greenberg are posted on its e-mail system with a short description.  (Id. ¶ 8 (citing Kizner Tr. at 15:12-16 ("I see all the matters that are new matters that come into the firm.  Because they're all posted on our e-mails—you know, through e-mails, the names of the cases with a short description.")).)  Kizner further testified that Flaster/Greenberg has records of one or "a handful" of consumer foreclosure cases in which it assisted and would provide the case caption or captions.  (Id. ¶ 9 (citing Kizner Tr. at 37:4-23 (citing Flaster Greenberg-6 at 2 (¶ 8)) ("Q. On Page 2, Paragraph 8, Attorney Goodkind writes as

3

follows.  I'm going to start in the middle of the sentence: I simply do not collect and have not collected debts subject to the FDCPA with, at most, the exception of a handful of extremely limited situations that do not rise to the level of my meeting the well established legal definition for a debt collector under the FDCPA.  Do you have any idea what the reference is to with the handful of extremely limited situations?  A. The only one I'm aware of is he was once asked by Phelan to assist them in the settlement of a foreclosure case involving a consumer.  And that's the only one that I know myself where he was involved in a matter where adverse to a consumer.  But he does say a handful, so there may be others, but I'm not aware of it.  Q. Okay.  Do you have any idea what the case caption is on that foreclosure case?  A. We can get it for you.")).)  Kizner testified that Flaster/Greenberg maintains records of all depositions taken in matters, like this one, which arose out of a deposition, where Goodkind defended a debt collector against a consumer.  (Id. ¶ 10 (citing Kizner Tr. at 68:14 - 70:8 ("Q. All right.  And you're saying only Mr. Goodkind would have records of those cases?  A. Our firm has records of whatever depositions were taken in the matters that he's handled.")).)  Kizner indicated that Flaster/Greenberg would provide Plaintiff with the results of its purported internet search for all civil actions in which Goodkind might have served as an FDCPA debt collector.  (Id. ¶ 11 (citing Kizner Tr. at 75:4 - 76:2 (citing Flaster Greenberg-6 at 2 (¶ 5)) ("Do you mean is there a paper, a document, showing the results at the time that Mr. Goodkind did it before?  . . . I don't know the answer to that.  If it is, and you would ask for it, you would get it . . . .")).)  Kizner testified that Flaster/Greenberg saves all of its litigation files.  (Id. ¶ 12 (citing Kizner Tr. at 78:10 - 81:3 (citing Flaster Greenberg-6 at 2 (¶ 7)) ("Q. All right.  And these files do exist, though; correct?  A. What files are you referring to?  Q. The files that would be required to do such a search?  A. Yeah.  We save our litigation files.  We save all of our files.")).)

Counsel for Flaster/Greenberg prevented Kizner from further testifying about documents, taking the position, at the deposition, that this Court's December 1, 2017 order served to disallow any document discovery.  (Id. ¶ 13 (citing Kizner Tr. at 76:4-22 ("MR. GERSH: I just want to put on the record that while the Witness is referring to that, that's not Flaster Greenberg, as a party, waiving its position that no documents are—no document discovery is permitted, as confirmed by Judge McHugh in his Order.  I just want to be clear of that.  MR. PEARSON: He's testifying to what he's testifying to.  He can say what he believes to be true.  MR. GERSH: He can as a witness, but as Counsel for the party, I want to be clear that his statement does not constitute a waiver of our position.  THE WITNESS: That's true.  I didn't know that there was such an Order.  If that's the case, obviously the Order guides, not my words.").)  Flaster/Greenberg has, indeed, failed to produce any documents, as promised or otherwise.  (Id. ¶ 14.)

## III.     ARGUMENT

Flaster/Greenberg and Goodkind's motion rests entirely upon the self-serving remarks of Flaster/Greenberg's designated representative (see Mem. Supp. Renewed Mot. Summ. J. at 2-4, 6-8 (citing Kizner Tr.)), while Flaster/Greenberg was unwilling or unable to support its testimony even with relevant documents that it admitted that it had (see Pearson Decl. ¶¶ 3-14 (citing Kizner Tr. passim)).  The deposition of Flaster/Greenberg's designated representative had value in that it yielded an admission that the relevant documents do exist (see id. ¶¶ 3-4, 6-10, 12 (citing Kizner Tr. at 13:1 - 16:18, 33:4-8, 34:23 - 35:15, 37:4-23, 40:4-21, 41:12:17, 43:11-20, 44:11-14, 68:14 - 70:8, 78:10 - 81:3)) and a promise, on behalf of Flaster/Greenberg, to produce them (see id. ¶¶ 5, 9, 11 (citing Kizner Tr. at 27:15-17, 37:4-23, 75:4 - 76:2)).  Still, Flaster/Greenberg has not produced any documents (see Pearson Decl. ¶ 14) and refuses to

produce them (see id. ¶ 13 (citing Kizner Tr. at 76:4-22)). Now, on December 1, 2017, this Court ordered, "Upon completion of the deposition, if substantial cause for further discovery can be shown, Plaintiff may move for reconsideration." (Doc. 66.) Plaintiff has now shown that substantial cause.

## IV. <u>CONCLUSION</u>

Flaster/Greenberg and Goodkind have failed in their efforts to try to show that there is no genuine dispute as to any material fact. Cf. Fed. R. Civ. P. 56(a) (2018). Without, at least, such document production, inter alia, as set forth above, Plaintiff cannot present facts that may be essential to justify her opposition to the motion for summary judgment (see Pearson Decl. ¶ 15); accordingly, the Court should defer considering the motion or deny it, or allow time to take discovery. See id. R. 56(d).

          Respectfully submitted,

          s/ David E. Pearson

          _____
          David E. Pearson, Esquire
          6983 Weatham Street
          Philadelphia, PA 19119
          E-mail: DavidEP137@aol.com
          Telephone: (215) 849-1750
          Facsimile: (215) 849-1830
          Attorney for Plaintiff

Dated: September 27, 2018