**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SONYA HOFFMANN,** | : | |
| **Plaintiff** | : | **CIVIL ACTION** |
| **v.** | : | **No. 16-4230** |
| | : | |
| **WELLS FARGO BANK, N.A., et al.,** | : | |
| **Defendants** | : | |

**MCHUGH, J.**                                                **January 11, 2019**

**MEMORANDUM**

The question before me is whether a law firm's consumer debt collection practice

subjected it to the requirements imposed on debt collectors by the Federal Debt Collection

Practices Act (FDCPA). For the answer to be "yes," the firm must regularly collect or attempt to

collect consumer debt. On the record here, the defendant law firm's activities in the consumer

debt collection arena were incidental, not regular. The firm did not hold itself out as having any

particular expertise in consumer debt collection. And its total activities in this area—interpreting

every inference in Plaintiff's favor—comprised no more than 2.5% of its overall caseload. On

those facts and in the absence of any others suggesting a regular consumer debt collection

practice, I find that neither the firm nor Mr. Goodkind, a firm shareholder, are debt collectors

within the meaning of the FDCPA. Defendants are therefore not subject to the Act's

requirements and are entitled to judgment as a matter of law.

### I.      Factual and Procedural Background

Only two defendants remain in this protracted litigation:[1] Flaster/Greenberg, P.C., a

business law firm, and Kenneth Goodkind, a Flaster shareholder. Goodkind Decl. Ex. 4 ¶¶ 1, 3,

---

[1] I previously dismissed all claims against the other defendants. See ECF Nos. 32, 63, 64.

ECF No. 72-3.  Defendants have marketed their expertise in business debt collection involving "commercial workouts, restructurings and the like," and in residential mortgage foreclosure defense.  Goodkind Decl. Ex. 6 ¶¶ 11-13, ECF No. 72-4.  A small portion of the law firm's work has involved consumer debt collection.  "[O]f the hundreds of cases" Flaster handles per year, up to "five" cases involve consumer debt collection.  Kizner Dep. 20:11-21:13, ECF No. 71-3.  And of the many "millions" of dollars in fees Flaster's cases have generated annually, consumer debt collection cases have generated fees only "in the hundreds of dollars."  Kizner Dep. 45:12-21.  Also, Flaster shareholder Mitchell Kizner reports that, in his eighteen years at the firm, he personally has sent approximately four letters pertaining to consumer debt collection.  Kizner Dep. 23:4-15.

## II.    Standard of Review

This case is governed by the well-established standard for summary judgment set forth in Fed. R. Civ. P. 56, as elaborated in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

## III.    Discussion

An entity is subject to the FDCPA only if it is a debt collector—one whose principal business purpose is to collect consumer debts, or who regularly collects or attempts to collect consumer debts.  15 U.S.C. § 1692a(5) (defining "debt" as "any obligation or alleged obligation of a *consumer* to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes") (emphasis added); 15 U.S.C. § 1692a(6) (defining "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the *principal purpose* of which is the collection of any debts, or who *regularly collects or attempts*

*to collect*, directly or indirectly, debts owed or due or asserted to be owed or due another")
(emphasis added).[2]

Lawyers and law firms may be "debt collectors" under the FDCPA's definition—and
therefore subject to liability or administrative enforcement under the Act—if their business'
principal purpose is to collect consumer debts or if they regularly collect or attempt to collect
consumer debts.  *Heintz*, 514 U.S. at 299 (holding that the FDCPA does not exempt lawyers and
applying the FDCPA to a lawyer who "'regularly' engage[d] in consumer-debt-collection
activity, even when that activity consist[ed] of litigation.").

Plaintiff does not contend that debt collection was a principal purpose of Defendants'
business, so the only question is whether Defendant lawyers regularly collected or attempted to
collect consumer debts.  If not, they are not "debt collectors" within the meaning of the FDCPA
and I must grant their motion for summary judgment.

The Third Circuit has not itself articulated a test for determining whether an attorney or
law firm has "regularly" collected or attempted to collect consumer debts for purposes of the
FDCPA but has cited with approval the Second Circuit's formulation.  *Oppong v. First Union
Mortg. Corp.*, 215 Fed. Appx. 114 (3d Cir. 2007) (citing *Goldstein v. Hutton*, 374 F.3d 56 (2d
Cir. 2004) for the proposition that whether an entity "regularly" collects debts may depend on the
percentage of its overall workload comprising debt collection).  The Second Circuit outlined a
number of factors relevant to a regularity inquiry which the Tenth Circuit formally adopted.
*Goldstein*, 374 F.3d at 62-63; *James v. Wadas*, 724 F.3d 1312, 1319 (10th Cir. 2013) ("We agree
with and adopt the standard set forth by the Second Circuit in *Goldstein*.)."   The regularity
analysis is comprised of a number of non-exclusive factors:

[2] The term "debt collector" is subject to various exclusions not relevant here. *See* 15 U.S.C. § 1692a(6).

> (1) [T]he absolute number of debt collection communications issued, and/or collection-related litigation matters pursued, over the relevant period(s), (2) the frequency of such communications and/or litigation activity, including whether any patterns of such activity are discernible, (3) whether the entity has personnel specifically assigned to work on debt collection activity, (4) whether the entity has systems or contractors in place to facilitate such activity, and (5) whether the activity is undertaken in connection with ongoing client relationships with entities that have retained the lawyer or firm to assist in the collection of outstanding consumer debt obligations.
>
> Facts relating to the role debt collection work plays in the practice as a whole should also be considered to the extent they bear on the question of regularity of debt collection activity (debt collection constituting 1% of the overall work or revenues of a very large entity may, for instance, suggest regularity, whereas such work constituting 1% of an individual lawyer's practice might not). Whether the law practice seeks debt collection business by marketing itself as having debt collection expertise may also be an indicator of the regularity of collection as a part of the practice.

*Goldstein*, 374 F.3d at 62-63.

The Second Circuit held that a law firm was a debt collector within the meaning of the FDCPA because it sent out 145 consumer debt collection notices in a one-year period and had a system in place for preparing and issuing such notices. *Id.* at 63. The law firm's system "relayed tenant arrears information to an outside computer service which generated the notices, assigned a paralegal to review them for consistency with the information provided by the landlord's managing agent, and sent the notices to a process servicer for delivery to the tenant." *Id.*

The Tenth Circuit adopted and applied the Second Circuit's multi-factor analysis in *James*, 724 F.3d at 1318. On the record there, it concluded that a lawyer was *not* a FDCPA debt collector because she engaged in just six to eight debt collection cases over the span of a decade—comprising less than 1% of her overall caseload—and did not have any systems or personnel specifically assigned to work on debt collection activity. *Id.* at 1318-19.

Given the Tenth Circuit's formal adoption of *Goldstein* and the Third Circuit's approving citation, I will follow it as well. But I find that the facts here are unlike those before the Second Circuit in *Goldstein* and more analogous to those before the Tenth Circuit in *James*. Unlike the law firm in *Goldstein* which handled 145 consumer debt collection cases in a year, Flaster handles just five. The lawyers here are like the lawyer in *James*. There, less than 1% of the overall caseload involved consumer debt collection. Here, no more than 5 of the hundreds of cases Flaster handles per year involve consumer debt collection, making those cases no more than 2.5% of Flaster's overall caseload ("hundreds" means at least 200; 5/200 = 0.025 or 2.5%). Using revenue as a measure, far less than 1% of Flaster's overall caseload involves consumer debt collection because, of the many millions of dollars in fees Flaster generates annually, consumer debt collection generates fees in just the hundreds of dollars ("hundreds" can mean no more than $999 and "many millions" means at least $2 million; 999/2,000,000 = 0.0004995 or 0.04995%).

Other factors for analyzing regularity of debt collection also support the conclusion that Flaster and its lawyers are not debt collectors. The absolute number of debt collection communications issued by the Flaster shareholder who recalls sending more than one communication is four. This is over a span of eighteen years. Such communications are certainly not "frequent" and I discern no pattern of consumer debt collection activity. That is not surprising considering that unlike the law firm in *Goldstein*, which had an elaborate system and personnel in place to facilitate debt collection, Flaster has none. Also, Plaintiff does not contend that Flaster's consumer debt collection activity is undertaken in connection with clients who are debt collectors creating a continuing stream of debt collection cases.

Although Flaster has marketed its debt collection expertise, it has marketed *business* debt collection expertise in "commercial workouts, restructurings and the like," not *consumer* debt collection expertise. To the extent the law firm has marketed its expertise in foreclosure, it has marketed its expertise in foreclosure *defense*, not foreclosure *prosecution* involving consumer debt collection.

In sum, none of the factors deemed relevant by circuit courts for identifying "regular" consumer debt collection activity exist here. Without evidence supporting Plaintiff's assertion that Defendants regularly collect or attempt to collect consumer debt, there remains no genuine issue for trial and Defendants are entitled to judgment as a matter of law.

## IV. Conclusion

For the foregoing reasons, I grant Defendants' Renewed Motion for Summary Judgment and dismiss Plaintiffs' Amended Complaint in its entirety with prejudice. An appropriate Order follows.

      /s/ Gerald Austin McHugh
United States District Judge